The next case today, number 25-1820, Ishmael Coygar Bangs v. Todd Blanche. At this time, would counsel for the petitioner please introduce himself on the record to begin. Good morning, your honors. Nathan Warecki on behalf of petitioner in this case, Ishmael Bangs. If I may, Judge Rickman, may I reserve one minute for rebuttal? You may. Thank you. This case involves a man named Ishmael Bangs. He's a refugee from Sierra Leone. He came to the United States seeking refuge, and here he found quite the opposite. Mr. Bangs was brought into the immigration system a few years ago following a conviction, a number of convictions, but the conviction that's relevant here is for witness tampering under New Hampshire Revised Statute Annotated 641-5-2, which is the witness tampering statute in New Hampshire. The immigration judge decided at the base level that that conviction fell within the generic definition of a crime relating to the obstruction of justice. That's the first issue, whether that ruling is correct. The second issue that this petition for review raises is whether the BIA legally erred when it decided, outside of the clearly erroneous standard, which is supposed to apply to factual findings of the IJ, that Ishmael Bangs did not have a clear probability of being tortured if he were returned to Sierra Leone. Mr. Bangs was ordered removed. He was granted cat deferral, and that is the other issue in front of your honors today. I'd like to address witness tampering first if you have a preference. This court has, in the Silva case a number of years ago at this point, pretty thoroughly interpreted what the generic definition of a crime relating to the obstruction of justice is. This case presents a subset, I think, of the general issue, and the issue, as Mr. Bangs sees it and as I see it, is that there's a nexus requirement in the generic definition between the four elements of that generic definition. That nexus is between specific intent to interfere with, quote, a ongoing, pending, or reasonably foreseeable investigation or proceeding. Counsel, can I just ask you to address one of the two major arguments that I understand you to be making on this point? So I think you're saying you disagree with the agency because you think there has to be a forward-looking aspect to it, not revenge, as you put it in your brief.  And then the second point you make is that your understanding of the relevant statute, the relevant federal statute and what obstruction of justice is, is that it would have to be in relation to an official proceeding. And this New Hampshire statute does not require an official proceeding. In fact, the facts here were an internal investigation by, I guess, a Macy's security officer, internal security officer. So I want to just narrow you in on that official proceeding requirement. But even if we agreed with you, even if we did all of the analysis and concluded that it does have to be an obstruction of justice of an official proceeding, the statutory phrase that we're still interpreting is relating to the obstruction of justice, which Civil Law looked at carefully. Relating to is supposed to be expansive, as the Supreme Court has told us and we said in Civil Law. So why wouldn't it still fall in to relating to the obstruction of justice? Because even though the person doing the investigation at the moment is an internal, is an employee of Macy's, the fact of the matter is probably Macy's would report it to the police, or potentially Macy's would report it to the police if they found evidence of shoplifting. So why is relating to not capacious enough to cover that? Thank you, Your Honor. And I think there are two major points on that. One is that in the Silva case, the majority opinion, that was an examination of the accessory after the fact statute in Massachusetts. And there was a lot of emphasis in the majority opinion upon the types of crimes that were charged as part of an accessory after the fact, which all had to do with homicide or very serious crimes. So relating to would encompass that type of activity. In this case, it's a shoplifting. It's probably a misdemeanor. It's probably not even a felony. So I think the gravity of the underlying predicate offense, I guess to put it, matters for whether the term relating to captures everything. Why would it matter? Don't we care about all of the criminal laws being enforced and not being obstructed? Yes. However, in the Pugin case, in the majority opinion authored by Justice Kavanaugh, he even says that the dictionary definition of obstruction of justice, which relating to is a modifier of, always gets back to interfering with the process of justice of law. Any impairment of the machinery of civil law, an investigation or proceeding must be pending. An investigation is required nonetheless. So I think when you're looking at the nexus requirement that I think everyone agrees is required for the relating to obstruction of justice definition, the reasonably foreseeable element requires, I think, a subjective view on the point of the person commissioning the crime that there will be an investigation in the future. And I think the severity of the offense to which there's a potential obstruction matters. And I think both the majority opinion and a dissenting opinion in the Silva case illustrate that. But aren't there frequently investigations into misdemeanors like that? I mean, the police get a report from a retailer, and then they send out a request for information about this person that was seen shoplifting. And so they're doing this all of the time. So I don't see how I struggle to think that because it's a relatively minor offense that the police are not interested in pursuing and enforcing those laws. And I do appreciate that. I think it's the reason because there was not an official investigation pending at the time that Mr. Banks commissioned the crime. And I think the reason reasonably foreseeable that it could be it could be initiated at any time based on the fact that the Macy's security was looking into the issue. Yeah, I mean, what is not in the record? I don't think in this case is what Mr. Banks actually thought was going to happen at the time of this. Is it a subjective inquiry? I think the defendant has to have that reasonable expectation or is it more of an objective look? I think reasonably foreseeable. You know, if you look at tort law, right, there's a there's a combination of what's objective and what's subjective. It's depending on how would that work with the categorical approach? We're supposed to just look. We're doing the categorical approach here. So we're looking at the crime as it's defined by New Hampshire law and looking at, you know, what is sort of the least serious version of it? And is it sufficient to meet the federal definition? How would that work with us with the subjective component that you're advocating? I'm not familiar. I can tie that together, Your Honor. So the Bard case, I think, is really illustrative of this point. We're from the categorical approach. We're looking for the least culpable conduct under the statute. The Bard case involves the same statute that's at issue in this case. It involves a retaliation by a father who was found to have abused and neglected their child. That abuse and neglect proceeding had concluded. The finding had been made. And then he retaliated against his daughter by sending some inappropriate letters to people at her school. And so I think that illustrates the point that under the categorical approach, the generic definition requires a reasonably foreseeable investigation or proceeding. But in New Hampshire, that particular statute, which Mr. Banks was convicted under, does not require necessarily a reasonably foreseeable future. But that's your second point, right, as opposed to your first argument as to the reasonable foreseeable ability of a future investigation, which I see as somewhat different than your argument, which I think is probably stronger, that because New Hampshire has said we aren't even going to require their – that was a completed investigation. Completed – I think he had pled or entered into a consent agreement or whatever it was.  And so there was – everything was in the past at that point. And nevertheless, because of the pure retaliation aspect of it, New Hampshire says its law applies that broadly. So that to me is a separate question that you can look at objectively to see what the New Hampshire law is. How does that support your first point that we should take a subjective look in what is otherwise a categorical approach for the reasonable foreseeability of a future proceeding? And at risk of asking you too many questions simultaneously, I similarly understood Baird to be about your forward-looking argument, not your official proceeding argument. And I had been asking you about your official proceeding argument because, of course, in Baird there was an official proceeding. Yeah. No, I think they're somewhat – I think they're somewhat entwined. So it's hard to answer one while not answering the other. And I think the official proceeding piece is pretty simple, actually. And if you look at the Pugin case, you can see there's a lot of discussion in Justice Sotomayor's dissent as to what the obstruction of justice definition means. And you cannot use related to expand the definition beyond what the statute would require. And so there's a look there at the federal retaliation statute and a requirement for an official proceeding. And there's also a number of cases cited too in our brief talking about how different courts look at that in this federal sentencing guidelines, which I think all support the need for – But we generally can't rely on a dissent to a Supreme Court opinion in issuing our decision. No, I know. But I think if you take the two, the majority opinion and the dissent, there is – I think that there's room there because it does not decide the issue totally. It's a very limited, I think, the Pugin case. But didn't the majority say that related – didn't it reiterate its line of case law saying that we interpret the phrase related to significantly expand? I understand your concern is this expands too much. Yeah. But that's why I'm asking you why it couldn't fall into the related to – the broadness of related to as the Supreme Court majority understood it in that case, which is that it is – it does significantly expand what the statute covers. And even if Macy's right now is doing an internal investigation, presumably most of the time it ends up in an official investigation as Judge Dunlop was asking. So it seems like it could be related to. I don't think that Pugin overrules Silva. And I think Silva still requires the reasonably – well, the BIA's own expression of the elements of obstruction of justice, which still requires the affirmative or intentional attempt to interfere with an investigation proceeding that is ongoing, pending, or reasonably foreseeable. And also, I think it preserves the concern in Silva that there has to be an investigation in the offing, at least in the offing, which, again, looks forward, not backward. If Your Honor wouldn't mind, I think I have two minutes. I want to address the other point. Yes, please. Thank you. The other issue is whether the BIA erred when it substantially reweighed the evidence that the IJ relied upon to find that Mr. Banks qualified for a CAT deferral. I'm aware of at least five cases in this circuit currently which deal with this particular issue, whether, as a matter of law, the BIA's reweighing of the evidence constitutes a legal error that can be reviewed. I think this is the first one to come to fruition. But I would like to note a few cases which are outside of the CAT context. One is the Adeyanjo case from this court in 2022, which talks about that the appeal is not the opportunity for the BIA to reweigh the evidence. The BIA is prohibited from fact-finding and citing to the regulations at 8 CFR 1003.1. The Contreras case, which is a cancellation removal case, but that case says that a BIA decision that turns a blind eye to salient facts and completely overlooks critical evidence is a result of legal error. And there are a number of other cases cited too in our brief. So here… Did they reweigh the evidence? It strikes me that it appears that the BIA accepted the credibility determination and simply said that, you know, even accepting the evidence, it doesn't go far enough because it doesn't prove why, for instance, the uncle was killed or the circumstances under which that happened. There might have been intervening circumstances that caused him to be killed that wouldn't bear on reasonable foreseeability persecution for Mr. Bangs. So I'm not sure of the underlying premise that there was a reweighing of the evidence because I think we've said that if it's purely speculative, that's clear error. And you can make that determination without, you know, contravening the BIA standard for clearly erroneous review. So I think the most illustrative example of that is that Ishmael Bangs' mother testified at length orally and in written, if I may, thank you, about the historic relationship between Ishmael's father, John Bangs, and the former president of Sierra Leone, Valentin Strasser. And she testified to that over decades. And she's a prescient fact witness as to what happened, especially in the timeframe between 1991 and 1996 when they all resided in the same presidential palace. And so she testified that there was an individualized risk because of that personal relationship between John Bangs, herself, her son, who also lived there in that timeframe. And you carry forward that to present day when Bao, now the president of Sierra Leone, is generally responsible for a government which is committing arbitrary killings in Sierra Leone and targeting the opposition. And the BIA does not… So are you arguing right now that you didn't even need the letter and the evidence of the uncle's death? You're saying just her testimony in general about the previous relationship, which I don't think is really disputed. It's not. Could have been enough. Is that what you're arguing right now? I think that the letter is corroborating for the testimony, which in and of itself proves at least the individual risk, which the BIA did not address at all. Okay. Thank you, counsel. Thank you. At this time, would counsel for the respondent please introduce herself on the record to begin? May it please the court, Jessica Lesnau on behalf of the Attorney General. Of the various issues considered by the agency in this case, and there were many, there are only two remaining for this court's review. The first is whether petitioner's New Hampshire witness tampering conviction is categorically an aggravated felony offense relating to the obstruction of justice such that he's removable. And petitioner, of course, argues that the New Hampshire statute is overbroad, but the court should reject this argument because it is clearly at odds with this court's precedent in Silva and the Supreme Court's precedent in Pugin. Both decisions took careful measures to explain the capacious reach of the federal generic definition. Does the government agree that there has to be an intent to interfere with the legal process in order to have an obstruction of justice conviction? Yes. Okay. So then what do you do with the decision in Baird, which I don't believe is addressed in your brief, that seems to suggest that New Hampshire doesn't require an intent to interfere with a legal proceeding? Because in that case, it appears that the legal proceeding was over and there was a simple, straightforward act of retaliation that was sufficient for a conviction under the New Hampshire statute. So if there needs to be an intent to interfere, how can you square that with what Baird does? I think the intent to interfere piece needs to be read carefully under the language that the court uses in Pugin. And as Judge Rickleman pointed to, the expansive reading of what relating to means. And so what this really gets to is whether at bottom retaliatory conduct involving a witness can satisfy the requirement. And our argument is that it does. Retaliatory conduct is exactly the type of conduct that the Congress has explicitly contemplated to be within the ambit of an offense relating to the obstruction of justice. If there is an ongoing or future proceeding, right, I completely get that. But Baird seems to suggest that it is criminal under the New Hampshire statute, at least, to retaliate even if it doesn't appear that there is any intent to interfere with a legal proceeding in that case because the proceeding was over. So I'm not sure – so I get your argument for forward-looking. But if we're applying the categorical approach, New Hampshire just seems to go further than federal law seems to suggest. Well, I think because the court is applying the categorical approach here, it's really important to look directly at the language of the New Hampshire statute and the surrounding text. So notably, subsection 2 of New Hampshire 6415 is the subsection named in the indictment. And subsection 2 is distinct from subsection 1 because it does not require a pending proceeding, investigation, intent to effect testimony. But when this is read in conjunction with, for example, the way that the Supreme Court applied the categorical approach in evaluating to begin with dictionary definitions, defining the obstruction of justice, I think in particular Brian Garner's definition is one that has gained a lot of traction. And it's quite broad. It says it captures every willful act of corruption, intimidation, or force that somehow impairs the machinery of the civil or criminal law. And that's exactly what retaliatory offenses do. So let me ask you about that because I did try to do a careful look at all the dictionary definitions and the relevant statutes. And they do, pretty much all of them, either refer to official proceedings or to legal officers or to the administration of justice or to some language like that. And so what I'm concerned about is that applying, even with the related to phrase, which is obviously expansive, it does seem like we'd be significantly enlarging the category to have it apply to internal investigations. Because although internal investigations may sometimes lead to the legal process, they don't always. And what internal investigations would be covered? So for example, if there's an internal, an employer does an internal investigation of a potential Title VII violation, for example, a lot of those don't end up in any sort of formal civil litigation. They're resolved privately between the employee who's complained and the employer. And so wouldn't we be at risk of allowing a far broader sweep of conduct to fall into the definition if we accept your position here, even under the categorical approach? Because relating to is broad, but how broad really should we decide it? Should we decide that it is? That's what I'm struggling with. So it'd be helpful to get the government's view. Respectfully, Your Honor, I disagree that it would be reading it too broadly. I think the language of the New Hampshire statute is exactly what Congress intended to sweep under the ambit of obstruction of justice. And that's also informed by the minimum sentencing requirement that's written into the statute. So only offenses that could be punishable by one year or more of imprisonment are going to sweep under the ambit of 1101-843-S, such that they would be considered obstruction of justice offenses. So I think when we're talking about the nature of an official versus an unofficial proceeding, the relating to language in Pugin and that Pugin discusses and in the statute is broad enough that it contemplates that if an individual retaliates against a witness, setting aside whether it's for a concluded proceeding or not, the intent there is to obstruct the wheels of justice. Let me ask you this, and you can tell me if you think my hypothetical just doesn't make sense. But this is what's concerning me. So, again, in the employer context, you have an employee who complains about sexual harassment against a fellow employee. The employer investigates, which I think most employers do an internal investigation first. The person who's alleged to have sexually harassed the employee engages in some sort of intimidating conduct on social media. It could be many, many things. That, to me, seems potentially covered by this Part 2 of the New Hampshire statute. Are you arguing that would be an aggravated felony for the purposes of the analysis that we're doing here? And if so, why isn't that just much broader than what we should be deciding under the categorical approach? So just tell me if you disagree with that. But that's what I'm concerned about. This is a very broad statute, it seems to me, in New Hampshire. Before I answer the hypothetical, I want to make sure I understand the hypothetical. So you're saying if it's a situation where somebody is retaliating by use of nonphysical force, something like social media? I'm just saying there could be all sorts of retaliation that takes place against somebody who's accused of sexual harassment in the workplace. Maybe it is physical force. Social media may have been a bad example, but I'm just wondering if, in that context, it's a purely internal investigation. Somebody is intimidating a witness under the definition of intimidating in New Hampshire, which I don't recall right now. Are you saying that that would then become an aggravated felony? I'm saying that what I would point to, Your Honor, is – and I think it perhaps becomes more illustrative – the underlying board decision that preceded Silva and preceded Pugin is Valenzuela-Gallardo. And in Valenzuela-Gallardo, the board explicitly adopted Chapter 73 and all of those obstruction of justice offenses. So if the court applying the categorical analysis looks, for example, to 18 U.S.C. 1513, which is the witness retaliation statute, at subpart B of 1513, that language is similarly broad and I think instructs that a lot of conduct can be swept under the definition of obstruction of justice or relating to the obstruction of justice. But doesn't that language all have to do with sort of administration of justice, legal process, and other similar phrases that, again, suggests that it's relating to an official proceeding? And what you would like us to do here is say relating to something that might eventually lead to an official proceeding. Right. I think the language at 1513, I mean, it incorporates conduct that is both bodily harm, also threatens or even attempts to threaten to cause damages to tangible property or provides any information that could relate to the commission of an offense. And so I think applying the – See, the offense, that's an official proceeding. So that's exactly what I'm concerned about. And I think the point is that the beginnings of an official proceeding are presumably always initiated in such a way. There is an informant and that informant goes to police or by some means the police become aware of the commission of an offense such that an official proceeding later ensues. And so I think it's maybe splitting hairs a little too much there to question whether the private investigation that would ultimately potentially lead to the official investigation isn't enough to satisfy the definition. Just one question. Anything on the record to support that an official investigation was foreseeable? In this particular case, I can't recall off the top of my head, Your Honor, exactly what the background circumstances were about the foreseeability of a future investigation here. Certainly, it seems that the petitioner thought that an investigation was foreseeable because he engaged in the retaliatory conduct that resulted in his conviction. But we can't look at that under the categorical approach, can we? So your opposing counsel was suggesting we sort of adopt the subjective component of whether it's reasonably foreseeable. But we can't look at anything really beyond the statute and what is the least culpable conduct it could cover, right? So we can't look at the underlying facts and what the person may have – what this particular defendant may have understood. You agree with me on that, right? We're looking – the court should be looking to the minimum conduct captured under the New Hampshire definition. Under the text of Part 2 of the statute. Yes, Your Honor. And I think – Can I take you back to Baird for just a moment? So thinking about the second of petitioner's two arguments in this context here, I just want to make sure that I fully understand your argument. So you're arguing that the intent to interfere with the legal process, arguably that didn't exist in Baird because the legal process was over. But you're saying that doesn't matter. And are you saying it doesn't matter because the intent to interfere with the legal process is that the action of taking retaliation undermines the administration of justice in its entirety? That it would break down the overall system that we have to allow for retaliation. So that's the intent that you are relying on to satisfy the standard here? Yes, I think so, Your Honor. First, I think the New Hampshire statute itself has an explicit intent requirement, the intent to retaliate. And that intent is enough, we are arguing, to satisfy the generic definition. We think that 1101A43S targets serious offenses. A conviction under New Hampshire 6415 is exactly – that results in a one-year sentence, of course – is exactly the type of conduct that Congress intended to sweep under the definition of obstruction of justice. And we know that because we can look at the federal definition of witness tampering or witness retaliation to see just how broadly Congress intended to sweep when considering what types of offenses obstruct the machinations of the wheels of justice. Counsel, could you move to the second issue and I'll give you an extra minute because I know we had a lot of questions for you on the first one. Yes, Your Honor. So petitioner here has not demonstrated that the board clearly erred – that the board committed error in its application of clear error review to the immigration judge's decision. The board correctly applied clear error review. And I think that reading Adeyanju, which is the decision of this court that my friend on the other side has mentioned, the clear error standard doesn't restrict the BIA's authority to analyze evidence that's been presented before the immigration court. And so what the board did here is follow its own regulations. Not only did it cite to its regulations, but then it applied those regulations properly and explicitly found that the immigration judge had committed clear error in its reliance on speculative evidence that was insufficient to meet the standard for CAT. What's your response – so I understand your argument as it relates to the letter, the communication that came in. What do you say in response to your counterpart's argument that the testimony of the mother in this instance about what had gone on was in and of itself sufficient to establish the finding? We would strongly disagree with that contention. Can you explain? We think in accordance with what the board determined, and this is exactly why the board determined that the IJ committed error, is that the mother's testimony was seemingly undergirded by a chain of hearsay. So while she was in Sierra Leone at the time of the original event, the collapse of the Strasser regime, she and Mr. Bangs departed Sierra Leone. She's been in the United States for 30 years. Her testimony, as she provided it, evidently came from a first cousin of Mr. Bangs' father, and that first cousin spoke to someone else in Liberia who spoke to someone else in Sierra Leone who informed her of this purported killing. So the speculative nature of her testimony, which was corroborated by the letter, is simply insufficient to meet the CAAT standard, and that's exactly what the board determined. Why is that so? In other words, the IJ who saw her testify said she was credible, and I read the relevant testimony myself. And I understand, I appreciate your point that, of course, she was learning about this from other people, but there was really no other way for her to learn about the information since she's in the United States. She explained why it was credible. Of course, people would know if their spouse relative was dead. That's a fact that people would know. And as she explained, given the situation in the country, the sharing of information through family members is just very common practice, and I think that's true for many cultures, that this is how people obtain information. She explained it. She was consistent in how she explained it, and the IJ chose to credit her testimony. And credibility is something we do always defer to, to the person who watches the witness. So why is it wrong to say that really what the BIA did here is to just discount the IJ's credibility finding? Because what she talked about, even though it was – there was some hearsay involved, in and of itself could have convinced the IJ. You know, the person – people know this person is now dead. This is the account she received of how he died, and I find her credible in relaying the information. Why is that not sufficient to meet the burden of proof, which I understand you to be arguing? I can answer the question when my time is done. So I think we would argue that Ming Dai – the Supreme Court's decision in Ming Dai probably provides the clearest answer to this. Just because evidence is credible doesn't mean that that evidence is factually sufficient to meet the ultimate burden that's required for a CAT determination. I agree with you on that. That's why I was trying to ask you why is what she testified to, which explained her reasons for believing what she was told and why it was consistent with reports that she was reading about the country and consistent with the country conditions reports. Why is that not sufficient to meet the burden of proof? Right. I think it's insufficient, and the board agreed that it was insufficient, of course, to find a clear error because of the underlying speculation. Longstanding board precedent regarding CAT determinations explains that a CAT claim, which requires a showing of more likely than not that an individual would face torture, cannot be supported by a chain of suppositions. And that's exactly the type of support that undergirded the mother's testimony in this case. It may be the case that the only way that she could obtain evidence was through second or third or fourth hand hearsay. And unfortunately, that is simply not the type of evidence that is sufficient to demonstrate an individual would face a likelihood of torture by or with the acquiescence of a foreign government. But wouldn't that be de novo review? For the for the immigration judge? Correct. Sorry, for the board? For the board. That's right, Your Honor. The board would apply de novo review to whether the facts satisfy the ultimate burden and clear error review would apply to the to the immigration judge's factual findings alone. But they just issued a decision saying that it was clearly erroneous. They didn't issue a decision saying they were applying de novo review and found it insufficient for my reading of the board's decision. Do you disagree? I disagree with that, Your Honor. I think the board made clear. And actually, the board cited to its decision in matter of our AF, where the board says that it reviews predictive findings for clear error. And it reviews de novo, whether those predicted outcomes ultimately satisfy the definition of torture. And I think that's the definition of torture, though, is not an issue because the allegations that he would be killed. And I know the government agrees that being killed would be torture. Sure. So that yeah, that's why I didn't read that language in the way that you're suggesting now. Is there a part of the decision that you can point us to? Or you're also welcome to submit a 28 J if that's easier to to shore up what you're saying right now, which is that they had a separate de novo issue, which was whether the evidence, even if credible, was sufficient. Not about torture, just about about the overall burden with the predictive finding of whether he would be killed. And it's fine for you to submit a 28 J because I might have to look more carefully. I'm reading at page eight, which is the penultimate page of the board's decision, where the board in the second paragraph says ultimately the immigration judge's predictive findings about harm are based largely on speculation or conjecture rather than the record as a whole and therefore are clearly erroneous. Exactly. And that suggests they're applying the clearly erroneous standard. And then the board does go on to say respondent bears the burden to show his ultimate eligibility for cat protection. And that based on the record as a whole, petitioner failed to meet that burden. Thank you. Thank you. Thank you. At this time, when petitioners counsel, please reintroduce himself on the record. He has a one minute rebuttal. Thank you, Your Honors. Nathan work in behalf of Mr. Bangs. I just wanted to get address what my colleague just said. This is a clear air review. The BIA is not allowed to reweigh the evidence. This court in the Barrows case in 2022 described the standard this court is to apply to the BIA's decision as being the BIA must show that the contested fact finding quote stinks like a five week old unrefrigerated dead fish. I think that language was chosen for a reason because the BIA has to do more than just say I would have decided this case differently than the IJ. I'll submit to you that I don't see anything in the BIA's decision here, which says what was wrong with the way the IJ weighed the evidence is just that they would have decided it differently. I think the point I made earlier about the uncontroverted testimony from a Biba is the most illustrative example, but I think there's other examples in the record as well, which are in our brief. Thank you. Thank you. Thank you counsel. That concludes argument in this case.